UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCHAUMBURG BANK & TRUST COMPANY, N.A., | Appeal from the U.S. Bankruptcy Court for the Northern District of Illinois, Chapter 7 |
| Appellant, | Case No. 13-B-34832 |
| v. | Judge Donald R. Cassling presiding |
| R. SCOTT ALSTERDA, not individually, but solely as Chapter 7 Trustee for the bankruptcy estate of Hartford & Sons, LLC, | Case No. 14-cv-10095 |
| | Judge John W. Darrah |
| Appellee. | |

# MEMORANDUM OPINION AND ORDER

Appellant Schaumburg Bank & Trust Company, N.A., ("Schaumburg") appeals the Bankruptcy Court's October 28, 2014 Order, which overruled Schaumburg's objection to the Trustee's Motion to Approve a Settlement with Thomas Hartford, Jr. ("Hartford Jr."). For the reasons discussed below, the Bankruptcy Order is affirmed.

## BACKGROUND

The relevant facts in this case are not disputed. Hartford & Sons, LLC, ("Hartford LLC") operated a site utility construction business, which primarily installed new sewer and water facilities for industrial and commercial customers. Hartford LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois on August 30, 2013. The chapter 11 bankruptcy was converted to a case under chapter 7, and R. Scott Alsterda ("Alsterda" or "Trustee") was appointed as chapter 7 Trustee for the Hartford LLC estate.

Schaumburg holds a valid, first-priority interest in and to all of Hartford LLC's assets, including accounts receivable. Warren F. Thomas Plumbing Company ("Warren") issued a check, dated August 30, 2013, for $24,680.70 payable to Hartford LLC. The check was endorsed to Hartford Jr. and deposited into his personal bank account the same day. Powers & Sons Construction Company, Inc. ("Powers") issued a check, dated September 9, 2013, for $11,709.19 payable to Hartford LLC.[1] This check was also endorsed to Hartford Jr. and deposited into his personal bank account on September 12, 2013.

On November 12, 2013, the Bankruptcy Court entered an order that modified the automatic stay and allowed Schaumburg "to exercise its state law remedies with respect to collateral pledged to the movant by the Debtor, and in which Schaumburg asserts a valid, first-priority security interest." (*See* Bankruptcy Case Dkt. No. 77.) Sometime after the entry of this order, Schaumburg discovered the Transfers. On April 3, 2014, Schaumburg filed a lawsuit against Hartford Jr. in the Circuit Court of Cook County, seeking to recover the funds as fraudulent transfers. The state court entered judgment in favor of Schaumburg bank on July 30, 2014.

On July 21, 2014, Alsterda filed a Motion to Approve a Settlement Agreement with Hartford Jr. Under the terms of the proposed settlement: Hartford Jr. would pay $36,389.89 to the Trustee on behalf of the Estate, Hartford Jr. would release the Trustee and Estate from all claims regarding the transfers, and the Trustee would grant Hartford Jr. a release from all claims regarding the transfers ninety-one days after the settlement payment cleared. Schaumburg did not object to the proposed settlement but did object to the Trustee's right to retain the settlement

---

[1] The two deposits into Hartford Jr.'s personal checking account are referred to as the "Transfers."

proceeds. On September 16, 2014, the Bankruptcy Court entered an agreed order granting the Trustee's settlement motion, and set a briefing schedule on the disposition of the settlement proceeds.

After full briefing, the Bankruptcy Court overruled Schaumburg's objection. The Bankruptcy Court held that Schaumburg lacked standing to file the lawsuit against Hartford Jr. Specifically, the Bankruptcy Court found that the Stay Relief Motion did not give indication or notice that Schaumburg sought derivative standing to pursue avoidance actions against Hartford Jr. on behalf of the Estate or sought to compel the Trustee to abandon the Estate's interest in any avoidance actions. The Bankruptcy Court also held that Schaumburg's security interest only extended to identifiable proceeds of the Transfers and applied the lowest intermediate balance rule.

Schaumburg has framed the issues presented on appeal as follows:

(1) Whether the Bankruptcy Court erred by ruling that Schaumburg Bank lacked standing to bring its state court fraudulent transfer lawsuit against Thomas O. Hartford, Jr.

(2) Whether the Bankruptcy Court erred by ruling that Schaumburg Bank's security interest in the subject checks does not extend to any greater than the identifiable proceeds of the subject checks.

## LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 8013 provides that, on appeal, the district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings." The bankruptcy court's determinations of law are reviewed *de novo*, while its findings of fact are reviewed for clear error. *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009). The findings of fact are not at issue; therefore, the Bankruptcy Court's determinations are reviewed *de novo*.

**ANALYSIS**

*Standing*

The standard for a creditor's ability to assert a fraudulent transfer cause of action that otherwise belongs to the estate is clear: "the right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way." *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708-09 (7th Cir. 1994). In order to gain derivative standing, Schaumburg would have to ask permission from the Bankruptcy Court to bring a derivative suit after showing that the Trustee was not pursuing the cause of action. *See In re Xonics Photochemical, Inc.*, 841 F.2d 198, 203 (7th Cir. 1988). Schaumburg argues that this general rule does not apply when an automatic stay has been modified to permit a creditor to pursue state-law remedies. For support, Schaumburg relies on two unpublished bankruptcy opinions: *In re Cold 2005, Inc.*, 10 B 52802 (Bankr. N.D. Ill., October 31, 2011), and *In re Veluchamy*, 11 B 33413 (Bankr. N.D. Ill., June 19, 2012). Schaumburg argues that those cases recognize a distinction between relief from an automatic stay and derivative standing. However, those cases do not hold that a grant of derivative standing is redundant when relief from an automatic stay has been granted. Under the relevant case law, the Bankruptcy Court must still grant derivative standing to pursue the avoidance of fraudulent transfers. In this case, it did not do so.

Schaumburg also argues that it suffered a personal harm from the Transfers; and "where an avoidance action will benefit a particular creditor rather than the creditor body as a whole, a trustee does not have standing to pursue the claim." *In re Duckworth*, No. 10-83603,

2012 WL 4434681, at *4 (Bankr. C.D. Ill. Sept. 24, 2012) (citing *In re Teknek, LLC*, 563 F.3d 639, 646 (7th Cir.2009)). However, Schaumburg did not raise this issue before the Bankruptcy Court; and arguments that are not presented to a lower court "are waived and cannot be raised for the first time on appeal." *Chatz v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 372 B.R. 368, 374 (N.D. Ill. 2007) (quoting *In re Kroner*, 953 F.2d 317, 319 (7th Cir.1992)). Notably, this argument is not continued in Schaumburg's reply brief. Moreover, even if this were not the case, Schaumburg lost its security interest, as discussed below.

The Bankruptcy Order is affirmed as to standing.

*Security Interest*

Schaumburg further argues that it holds a superior interest to other creditors in the proceeds of the Trustee's settlement with Hartford Jr. The Bankruptcy Court held that once the Transfers were deposited and cleared Hartford Jr.'s bank account, "the proceeds were commingled with the other cash in the account so that Schaumburg Bank's security interest would continue in the cash proceeds from the two deposited and cleared checks only to the extent they remain identifiable." (Oct. 28, 2014 Transcript at 10:2-18.) When there has been a fraudulent conveyance, a "creditor may elect to recover either the property itself, or its cash value in satisfaction of the debt." *Tcherepnin v. Franz*, 489 F. Supp. 43, 45 (N.D. Ill. 1980). However, the amount recovered by the Trustee did not come from a proceeding challenging the Transfers as fraudulent conveyances. The settlement agreement provided that Hartford Jr. would pay $36,389.89 to the Trustee on behalf of the estate and that both sides would release each other from any claims regarding the Transfers.

The Bankruptcy Court held that once the checks were deposited into Hartford Jr.'s account, they became proceeds, as deposited accounts receivable become proceeds. *See*

5

*In re Chicago Lutheran Hosp. Ass'n*, 89 B.R. 719, 733-34 (Bankr. N.D. Ill. 1988) (holding that accounts receivable were commingled with other funds). [2] Under the Illinois Commercial Code, "a security interest . . . continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest . . . and . . . a security interest attaches to any identifiable proceeds of collateral." 810 ILL. COMP. STAT. 5/9-315(a).

By statute, the Bankruptcy Court was required to ask Schaumburg to trace the identifiable proceeds of its collateral in the checks received from Powers and Warren. *See* 810 ILL. COMP. STAT. 5/9-315(b)(2). Schaumburg argues that tracing does not apply because a creditor has the option of recovering the asset transferred or the value of the asset transferred. Schaumburg cites *Tcherepnin*, in support of this argument. However, *Tcherepnin* dealt with the fraudulent conveyance of real property and had no commingling issues. Here, the Bankruptcy Court found that Schaumburg's interest remains as to any identifiable proceeds of the collateral but that Schaumburg had not established that proceeds remained identifiable through tracing.

The Bankruptcy Order is affirmed as to Schaumburg's security interest.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Order is affirmed.

Date:____March 26, 2015_____      _____
　　　　　　　　　　　　　　　　　　　　JOHN W. DARRAH
　　　　　　　　　　　　　　　　　　　　United States District Court Judge

---

[2] The Trustee provided an excerpt of Hartford Jr.'s bank account statement for the time period from August 30, 2013 to September 17, 2013. (Dkt. 1-3, p. 118.) The statement showed the Transfers as well as forty-four other debit and credit transactions over that eighteen-day span.